UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD A., an Individual,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>ANDREW M. SAUL[1], Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 8:18-00596 ADS<br><br><br>MEMORANDUM OPINION AND ORDER |

## I. **INTRODUCTION**

Plaintiff Edward A.[2] ("Plaintiff") challenges the Defendant Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his applications

---

[1] The Complaint, and thus the docket caption, do not name the Commissioner. The parties list Nancy A. Berryhill as the Acting Commissioner in the Joint Submission. On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).
[2] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

for a period of disability and disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rejected his testimony concerning pain, symptoms, and level of limitation. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.[3]

## II. <u>FACTS RELEVANT TO THE APPEAL</u>

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing his applications for social security benefits in August of 2014, Plaintiff last worked on May 1, 2009, his alleged disability onset date. (Administrative Record "AR" 257). Plaintiff's applications allege disability based on "leg cramps, anemia, asthma, acerflex, anxiety and bloodpressure." (AR 303, 307). Plaintiff's earning records and testimony evidence that he last worked in shipping and receiving in May of 2009, earning reported income of approximately $4,300 for that calendar year. (AR 258, 400). Plaintiff testified that he only worked at the 2009 job for a short period of time and then was let go when he got sick and missed a few days of work. (AR 258). Plaintiff's earning records and testimony also evidence that he did not work and had no reported income for the years 2006 thru 2008. (AR 258, 400). The last years of reported substantial gainful earnings, approximately $20,000, are 2001 and 2002. (AR 258, 400). Plaintiff's reported earnings were less than $1000 for 2003, less than $4000 for 2005 and $0 for the years 2004 and 2006. (AR 400). Plaintiff testified that he did

---

[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Docket("Dkt.") Nos. 12, 15].

handyman work intermittently between jobs (AR 259), however, none of this appears to have been reported income.

When asked by the ALJ as to the primary reason he cannot work, Plaintiff testified that it is because he cannot tolerate the pain. (AR 260). He stated that he cannot sit or stand for long periods and that he cannot function on the medication he takes. (AR 260). Plaintiff emphasized that his leg cramps are particularly problematic for him. (AR 260-64). Other than his pain medication, however, Plaintiff testified that he is undergoing no treatment for his disabling conditions, although in the past he has undergone physical therapy, trigger point injections, pain management, exercise, ice therapy, bed rest, massage and acupuncture. (AR 261-63). Plaintiff did not dispute evidence referenced at the hearing that his August 2014 medical records indicate that he was discharged from physical therapy because he did not show up for his appointments. (AR 262). Plaintiff testified that he has anxiety, however, he also testified that he has undergone no specific mental health treatment. (AR 262-63).

Despite having no evidence of significant employment since 2002, Plaintiff produced no medical records prior to 2010. (AR 254). Plaintiff testified that his major complaint of leg cramps began about nine years ago and that he initially got them once a year and then they progressed to every six months, and then every month and at the time of the hearing he stated he gets leg cramps about once a week. (AR 264).

Plaintiff testified that in the last seven years since he has not been working, he has been living with his parents and, at times, going to school. (AR 266-67). Plaintiff testified that he attended classes from about 2013 thru 2015 at Cypress Community College in an auto body program. (AR 267-68). He stated he completed about four or five semesters of credits and then he stopped attending because of his pain. (AR 267).

Plaintiff also testified that he has had a girlfriend as recently as a year and a half prior and would do things like go to dinner and the movies with his girlfriend, but that he no longer does as he has no money. (AR 269). Plaintiff completed a function report in September 2014 wherein he stated that his days consisted of doing homework, some housework including laundry and cooking, taking care of his dogs, going to school and to the gym. (AR 437). Plaintiff reported no problems with socializing and interacting with family and others. (AR 436-44). At the September 2016 ALJ hearing, Plaintiff testified that he helps with household chores when he physically can and that he walks a few blocks for exercise. (AR 270).

### III. PROCEEDINGS BELOW

#### A. Procedural History

Plaintiff protectively filed his applications for DIB and SSI on July 25, 2014, alleging disability beginning May 1, 2009. (AR 388-89, 390-99). Plaintiff's claims were denied initially on September 15, 2014 (AR 303-06, 307-10), and upon reconsideration on December 19, 2014 (AR 313-17). A hearing was held before ALJ John W. Wojciechowski on September 29, 2016. (AR 250-75). Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert, Luis O. Mas. (Id.)

On December 14, 2016, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[4] (AR 31-44). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for

---

[4] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

-4-

review on March 19, 2018. (AR 1-7). Plaintiff then filed this action in District Court on April 11, 2018, challenging the ALJ's decision. [Dkt. No. 1].

B. **Summary of ALJ Decision After Hearing**

In the decision (AR 31-44), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5] 20 C.F.R. §§ 404.1520(a) and 416.920(a). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since May 1, 2009, the alleged onset date. (AR 36). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) bilateral leg cramps; (b) myofascial pain syndrome; and (c) asthma. (Id.).

At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (AR 38). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6] "to perform the following: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand

---

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently climb, balance, stoop, kneel, crawl, and crouch; never use ladders, ropes or scaffolds; and avoid concentrated exposures in the workplace to fumes and other pulmonary irritants." (AR 38).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff could not perform his past relevant work as a shipping clerk. (AR 42). At **step five**, considering Plaintiff's age, education, work experience, RFC and the vocational expert's testimony, the ALJ found that there "are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" such as: gate attendant, mail sorter, and cashier. (AR 42-43). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 1, 2009, through the date of the decision, December 14, 2016. (AR 43).

## IV. ANALYSIS

### A. Issue on Appeal

Plaintiff raises one issue for review: "whether the ALJ properly rejected [Petitioner's] testimony concerning pain, symptoms, and level of limitation." [Dkt. No. 29 (Joint Submission), 4].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of

fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. **Whether the ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff asserts that the ALJ improperly rejected his subjective complaints concerning pain, symptoms, and level of limitation. Defendant contends that the ALJ appropriately found Plaintiff's symptoms and limitations allegations not fully supported by the record.

#### 1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendant does not contest, and thus appears to concede, that Plaintiff carried his burden of producing objective medical evidence of his impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040; see also Social Security Ruling (SSR) 16-3p (findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's

symptoms"). To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas, 278 F.3d at 958-59 (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2. The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.[7] The ALJ found that Plaintiff's subjective complaints were not consistent with the

---

[7] The ALJ did not make a finding of malingering in his opinion. (AR 31-44).

evidence of record, Plaintiff's sporadic work history and Plaintiff's normal level of daily living and interaction. (AR 38-42).

Important to note, the ALJ did not entirely reject Plaintiff's testimony concerning his pain, symptoms, and level of limitation. Rather, the ALJ stated that "[t]he evidence of record *does not fully support* the claimant's allegations." (AR 39) (emphasis added).

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's and his friends' statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 41). Indeed, the ALJ took Plaintiff's severe impairments and reported symptoms into consideration when he assessed Plaintiff with an RFC for light work only, with additional limitations given for his asthma condition. (AR 38, 43).

The ALJ did a thorough review of Plaintiff's medical records and found that they did not fully support Plaintiff's allegations. The ALJ noted and cited to medical records from 2010 through 2013 evidencing that Plaintiff had been evaluated and treated for Barrett's esophagus, anemia, GERD, hiatal hernia and diabetes mellitus. (AR 36). The ALJ found that these conditions were nonsevere as they were being managed medically, were amenable to proper control and no aggressive treatment was recommended for them. Id. Medical records from 2014 thru 2016 were detailed by the ALJ and noted to contain only normal findings that were not consistent with one claiming to be disabled. (AR 39-41). "The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 41). The ALJ made note of the fact that there were significant gaps in the treatment history, relatively infrequent trips to the doctor for the allegedly disabling impairments and that the majority of the treatment

has been essentially routine and/or conservative in nature.[8] (AR 41). See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (finding that proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding that an ALJ can rely on a physician's failure " to prescribe... any serious medical treatment for [a claimant's] supposedly excruciating pain"). Although Plaintiff asks what further treatment was possible, Plaintiff provides no evidence to support this rhetorical argument, essentially failing to recognize the burden to establish disability rests on him.

The ALJ also noted that Plaintiff's sporadic work history undermined his testimony: "[a] review of [Plaintiff's] work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the [Plaintiff's] continuing unemployment is actually due to medical impairments." (AR 41). As detailed above, Plaintiff's work history was sporadic at best (often non-existent) long before he reported disabling symptoms. It was proper for the ALJ to raise this concern when assessing the credibility of Plaintiff's testimony. See Thomas, 278 F.3d at 958-59 (an ALJ may consider a claimant's work record when weighing his credibility). Plaintiff contends that the Ninth Circuit in Delegans v. Colvin,

---

[8] The ALJ was specific to state that the treatment Plaintiff received was essentially routine and/or conservative in nature – "other than injections" and noted that Plaintiff's use of medications did not suggest more limiting impairments than those found. (AR 41). See Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"). Plaintiff has made no argument nor presented any evidence that any doctor prescribed treatment modalities for his physical conditions that fall outside the realm of conservative care, other than as noted by the ALJ. The ALJ thus properly relied on the doctors' failure to prescribe any aggressive treatment of Plaintiff's physical conditions, other than the exception noted, as a basis for finding that his pain and symptom testimony was not credible. Meanel, 172 F.3d at 1114.

584 Fed.App. 328 (9th Cir. 2014) held that "statements about work history were of limited relevance because they involved time periods predating alleged onset date." [Dkt. No. 29, p. 11 (citing 584 Fed.App. at 330)]. The Delegans case, however, involved a different issue related to a claimant's "work history." Here, the ALJ was questioning Plaintiff's credibility, specifically whether his continued unemployment was actually due to medical impairments, based on Plaintiff's very sporadic work history, relating back long before his alleged onset date. In Delegans, the issue was whether the claimant's statements about his limitations and work history were relevant, given that the statements predated the onset date of disability. Credibility of medical complaints due to historically marginal work history was not at play in Delegans and thus this case is not applicable here.

The ALJ also found that Plaintiff's "somewhat normal level of daily activity and interaction", undermine his testimony. (AR 41) (noting pet care, homework, some housework, preparing meals, laundry, using a computer, television and movies, using public transportation, going out alone, shopping, spending time with others, going out to eat, going to stores and movies, and going to school). An ALJ is permitted to consider daily living activities in his credibility analysis. See 20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor which will be considered in evaluating symptoms); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors"). The ALJ also noted that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 41). Although Plaintiff

takes issue with this, an ALJ is permitted to consider daily living activities in her credibility analysis. See Burch, 400 F.3d at 681. Daily activities may be considered to show that Plaintiff exaggerated her symptoms. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not suggest [claimant] could return to his old job" but "did suggest that [claimant's] later claims about the severity of his limitations were exaggerated.").

Based on these clear, convincing and specific reasons for partially rejecting Plaintiff's pain and limitations testimony and the substantial evidence to support his determination, the Court concludes that the ALJ did not commit error in discounting Plaintiff's testimony.

**V.      CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATE: March 10, 2020

                                              /s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge